Filed 12/13/24  P. v. Johns CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>ERIC JOHNS,<br><br>     Defendant and Appellant. | A165875<br><br>(Contra Costa County<br>Super. Ct. No. 04001940477) |

Defendant Eric Johns was convicted by a jury of a single count of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1)) and placed on probation for a period of two years.[1]  During jury selection, he objected to the prosecutor's exercise of a peremptory challenge as impermissibly based on the prospective juror's gender in violation of Code of Civil Procedure section 231.7.[2]  On appeal, Johns does not claim error in the trial court's finding that the prosecutor's rationale for the challenge was

---

[1] The jury was unable to reach a verdict on an additional charge of assault with a firearm (Pen. Code, § 245, subd. (b)).  After sentencing on the other count, Johns pled no contest to assault with force likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(4)) in exchange for the dismissal of the original assault charge.  This conviction is not at issue on appeal.

[2] All undesignated statutory references are to the Code of Civil Procedure.

unrelated to the prospective juror's gender. But he contends that reversal is nonetheless required because the prosecutor did not additionally show, and the trial court did not expressly find, that the articulated reasons bore on the prospective juror's ability to be fair and impartial. We are unpersuaded by Johns's arguments and will therefore affirm the judgment.

## BACKGROUND

### I.    Legal Background

Enacted in 2020, section 231.7 prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a); Stats. 2020, ch. 318, § 2, subd. (a).) Section 231.7 is designed to address and eliminate both purposeful discrimination and implicit unconscious bias in the jury selection process. (*People v. Uriostegui* (2024) 101 Cal.App.5th 271, 277–278 (*Uriostegui*).)

Pursuant to section 231.7, subdivision (b), a party may object to another party's peremptory challenge as improper on the ground that it seeks to remove a juror based on a prohibited factor. Once such an objection is made, the party seeking to challenge the juror must "state the reasons the peremptory challenge has been exercised." (*Id.*, subd. (c).) The trial court must then evaluate "the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge. If the court determines there is a substantial likelihood that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership

2

in any of those groups, as a factor in the use of the peremptory challenge, then the objection shall be sustained." (*Id.*, subd. (d).) The court must explain the reasons for its ruling on the record. (*Ibid.*)

In addition, section 231.7, subdivision (e) lists 13 reasons that are presumed to be invalid if given as the justification for a peremptory challenge. If a party articulates one of those 13 reasons as the basis for the peremptory challenge, the challenge must be denied unless "the party exercising the peremptory challenge can show by clear and convincing evidence that an objectively reasonable person would view the rationale as unrelated to a prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, and that the reasons articulated bear on the prospective juror's ability to be fair and impartial in the case." (*Ibid.*) "To determine that a presumption of invalidity has been overcome, the factfinder shall determine that it is highly probable that the reasons given for the exercise of the peremptory challenge are unrelated to conscious or unconscious bias and are instead specific to the juror and bear on that juror's ability to be fair and impartial in the case." (*Id.*, subd. (f).)

On appeal, the overruling of an objection under section 231.7 is reviewed de novo "with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) The appellate court is to "consider only the reasons actually given . . . and shall not speculate as to or consider reasons that were not given to explain . . . the party's use of the peremptory challenge." (*Ibid.*) If the appellate court concludes the trial court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

3

## II.     Factual Background

Because Johns's sole claim on appeal is addressed to the prosecution's exercise of a single peremptory challenge, we provide only a limited recitation of the facts of the crime and focus primarily on the record of voir dire regarding the prospective juror challenged.  In short, Johns was arrested after intervening in a domestic dispute involving his female cousin, her child and the child's father.  According to Johns's testimony at trial, he fired his gun towards the ground as a warning shot only after the father approached him aggressively.  It was undisputed that Johns was convicted of a felony in 2005.

Turning to voir dire, in response to the court's standard questions to all jurors, S.G. stated that she is a senior human resources business partner who lived in Concord with her husband, a project manager for the City and County of San Francisco Rent Control Board.  She was arrested for driving under the influence (DUI) when she was 21 years old; her husband is a convicted felon.  Neither she, her family, nor her close friends had been the victim of a crime involving the use of a firearm.  Her uncle is a retired law enforcement officer.  She is not a member of a group or organization focusing on the protections or restrictions of firearm use, nor has she contributed to such groups.  In response to the prosecutor's questions, she indicated that she agreed with the law that felons should not own firearms for life and confirmed that her husband's status as a felon would have no bearing on her decision in this case.

The prosecutor exercised her second peremptory challenge to excuse S.G.  Johns objected pursuant to section 231.7 on the ground that S.G. was a member of a cognizable group based on her gender.  The prosecutor asserted that the reasons for the challenge to S.G. had nothing to do with her gender.

4

The prosecutor explained, "The reasons for me kicking her and using my peremptory challenge were pretty numerous. And I would say high on the list is that her husband is a felon. That concerns me, and that she might kinda put Mr. Johns—her husband in the shoes of Mr. Johns and feel some sympathy for him. Obviously, her husband had at least a semi-negative experience with the criminal justice system, if he has been convicted of a felony, and also spent time in prison. And they have discussed his time in prison which, again, makes me a little more concerned about her ability to be fair and be sort of outraged by the incident, and the outrage of the—the notion that felons should not own firearms. [¶] I also would note that she has no jury experience, so I am not sure how she is going to work in a group setting. She—her husband also works for the San Francisco Rent Control Board, and I would note that many officials in the San Francisco government are not only more left-leaning, but more sympathetic towards defendants in the criminal justice system. [¶] She also had a DUI at age 21, so she has been arrested before and presumably had, again, a semi-negative experience if you have been arrested for a DUI. [¶] And, finally, . . . she has purple hair which, to me, makes me think that she is someone that is not afraid to stand out in a group, especially having purple hair at her age, which I would assume is somewhere in her mid to late 30's, or early 40's, which isn't too common for people that age to have purple hair. And I would say that it makes me think that she will stand out and is less likely to go along with the group and more likely to stand her ground on an issue. [¶] And, for those reasons, that is why I have used my peremptory challenge."

After argument, the court summarized the reasons provided by the prosecution as including the prospective juror's purple hair, her lack of prior jury experience, her husband's employment, her prior arrest, and the facts

that her husband was a convicted felon, had served time in prison, and they had discussed his prison experience. The court concluded that the juror's arrest, her husband's conviction and prison experience, and her hair color were presumptively invalid reasons under section 231.7. The court questioned whether the remaining reasons qualified as presumptively invalid but stated that it would analyze the objection as if all the reasons were presumptively invalid.

In overruling the defense objection, the trial court stated: "So . . . assuming they are all presumptively invalid, I would have to find that by a . . . clear and convincing standard that, again, an objectively reasonable person would view the reasons offered by [the prosecutor] to be unrelated to the fact that [S.G.] is a woman. I do find that she has met that standard by clear and convincing evidence. [¶] I find the fact that [S.G.'s] husband was a convicted felon and did serve time in prison, and that they have discussed the case, has nothing to do with the fact that she is a woman, and I don't believe that an objectively reasonable person would view that reason, given the fact that the husband was a felon and in prison [that] [i]t was related to her group membership. [¶] I understand that [defense counsel] is asking that all of them should be viewed together. I understand, and I have done that. I just find that that particular reason is quite prominent, and it stands out, and it has nothing to do with the fact that she is a woman."

## DISCUSSION

Johns contends the trial court erred in denying his section 231.7 objection to the prosecutor's peremptory challenge of prospective juror S.G. Accordingly, we must determine de novo whether, in light of the totality of the circumstances, there is a substantial likelihood that an objectively reasonable person would view S.G.'s gender as a factor in the

6

use of the peremptory challenge.  (§ 231.7, subd. (d)(1).)  In doing so, we are limited to the following reasons offered by the prosecutor in support of the challenge:  (1) S.G.'s purple hair; (2) her lack of prior jury experience; (3) her husband's employment; (4) her prior arrest; and (5) her husband's status and experience as a convicted felon.

## I.    Presumptively Invalid Reasons

The arguably relevant categories of presumptively invalid justifications under subdivision (e) include: "(1) . . . [H]aving a negative experience with law enforcement or the criminal legal system. [¶] . . . [¶] (3) Having a close relationship with people who have been stopped, arrested, or convicted of a crime. [¶] . . . [¶] (9) Dress, attire, or personal appearance. (10) Employment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a). [¶] . . . [¶] (13) Any justification that is similarly applicable to a questioned juror or jurors, who are not members of the same cognizable group as the challenged prospective juror, but were not the subject of a peremptory challenge by that party." (§ 231.7, subd. (e).)

Although the trial court opted to treat all of the proffered reasons as presumptively invalid, we are not bound by that decision.  Whether a proffered reason is presumptively invalid under the statute is subject to our de novo review.  (See *People v. Caparrotta* (2024) 103 Cal.App.5th 874, 893, [interpreting provisions of section 231.7 de novo].)  On appeal, Jones concedes that S.G.'s lack of prior jury service is not a presumptively invalid reason and that the Attorney General is "perhaps" correct that the employment of S.G's husband at the Rent Board is not presumptively invalid because section 231.7 subdivision (e)(10) applies only to the prospective juror's

7

employment, not that of a family member. The parties agree, however, that S.G.'s purple hair, her prior DUI, and the fact that her husband was a convicted felon are all presumptively invalid justifications for the challenge. Accordingly, before evaluating the totality of the circumstances, we must determine whether the record supports the trial court's finding that the presumption of invalidity had been rebutted with regard to these three reasons.

In his opening brief, Johns argues that his conviction must be reversed because the trial court "made no express factual findings to support a conclusion the husband's status, or any other reason offered, was unrelated to bias and instead bore on S.G.'s ability to be fair and impartial." His argument, however, focuses solely on the prosecutor's asserted lack of showing as to why the reasons offered "bore on S.G.'s ability to be fair and impartial" and the trial court's related failure to make an express finding on this point. In his reply brief, Johns confirms that he is not challenging the trial court's finding that the prosecutor's reasons were unrelated to gender. Rather, he reasserts his argument that his conviction must be reversed because "the prosecutor failed to show by clear and convincing evidence the reasons for challenging a juror bore on the juror's ability to be fair and impartial in the case, and the court did not so find." The Attorney General concedes that the trial court expressly found only that the prosecutor's reasons were unrelated to gender and did not make an additional express finding that they bore on the prospective juror's ability to be fair and impartial. He argues, however, that the trial court need not articulate its findings in the precise language of the statute, and here the court was clearly aware of its duty and the record demonstrates that the prosecutor's reasons concerned whether the juror would be fair and impartial.

As an initial matter, neither party contends that there is any meaningful difference between the required showing in section 231.7, subdivision (e) that an "objectively reasonable person would view the rationale as unrelated to a prospective juror's" actual or apparent membership in a cognizable group and the required finding in section 231.7, subdivision (f) that "it is highly probable that the reasons given for the exercise of a peremptory challenge are unrelated to conscious or unconscious bias." Johns treats the trial court's finding that the prosecutor's reasons were "unrelated to the fact that [S.G.] is a woman" as equivalent to a finding that they were unrelated to conscious or unconscious bias. Accordingly, we will do the same for the purposes of resolving this appeal.

We need not decide whether subdivision (e) required two independent showings—(1) that the reasons for the peremptory challenge are unrelated to S.G.'s gender and (2) that the reasons bear on her ability to be fair and impartial—because we agree with the Attorney General that the prosecutor's explanation *did* bear on whether S.G. could be fair and impartial.[3] The prosecutor stated that she was concerned that S.G. might put her husband "in the shoes of Mr. Johns and feel some sympathy for him" and that S.G. might be "sort of outraged by the incident[] and . . . the notion that felons should not own firearms." This explanation thus bears on S.G.'s ability to

---

[3] Johns does not cite it, but one court has written: "Although having views that impair a prospective juror's ability to be fair is typically related to a challenge for cause [citation], by its terms, section 231.7, subdivision (e), renders the ability to be fair and impartial relevant to the exercise of a peremptory challenge for a presumptively invalid reason. The party seeking to exercise a peremptory challenge can overcome the presumptive invalidity of a reason *only* by establishing that the reason 'bear[s] on' the individual's 'ability to be fair and impartial in the case.' " (*People v. Jimenez* (2024) 99 Cal.App.5th 534, 544, fn. 3 (*Jiminez*).)

apply the law fairly and impartially. The prosecutor's explanation about S.G.'s lack of prior jury experience and her purple hair, while somewhat poorly articulated, suggested that S.G. might be disinclined to engage in the back-and-forth discussion that group deliberation requires. Finally, in context, the prosecutor's explanation that S.G. might have a "semi-negative experience" with law enforcement based on her prior arrest meant that S.G. might be influenced in her deliberations by a dislike of law enforcement.

Johns argues that the prosecutor's reasons are not evidence, in effect contending that to rebut the presumption of invalidity there must be evidence in the record to support a conclusion that the prosecutor's expressed concerns about S.G.'s ability to be fair and impartial were well founded. Not only was such evidence lacking, Johns continues, but S.G. expressly stated that her husband's conviction and prison term would *not* affect her ability to be fair and impartial. It is true that some appellate courts, in affirming a trial court's finding that the presumption of invalidity was overcome, pointed out that prospective jurors gave equivocal answers about their ability to be fair or impartial. (See *Jiminez, supra*, 99 Cal.App.5th at p. 544; *People v. Gonzalez* (2024) 104 Cal.App.5th 1, 17.) But while the statute requires "clear and convincing evidence," it is clear and convincing evidence that "an objectively reasonable person would view . . . that the reasons articulated *bear on* the prospective juror's ability to be fair and impartial." (§ 231.7, subd. (e), italics added.) An illogical or implausible connection between the reason given and an ability to be fair and impartial would not pass muster under that standard, but a requirement that the juror acknowledge difficulty in being fair and impartial, or otherwise demonstrate an inability to be fair and impartial, would transform peremptory challenges into challenges for cause. And again, here Johns does not dispute that the trial court properly found

10

that an objectively reasonable person would view the prosecutor's reasons as unrelated to S.G.'s gender—i.e., as unrelated to conscious or unconscious bias.

Finally, although the trial court made no express finding about whether the prosecutor's reasons for the peremptory challenge were "specific to the juror and bear on that juror's ability to be fair and impartial in the case" (§ 231.7, subd. (f)), we agree with the Attorney General that its failure to do so does not by itself require reversal on the record before us. *Uriostegui, supra*, 101 Cal.App.5th 271, on which Johns relies, is distinguishable. As the court in that case pointed out, the prosecutor failed to offer any explanation why the presumptively invalid reason—the prospective juror's lack of employment or underemployment (§ 231.7, subd. (e)(11))—bears on the ability to be fair and impartial. (*Uriosteghi, supra,* at pp. 279–280.) While the court also emphasized the lack of an express finding by the trial court (*ibid.*), it did not hold that reversal is automatically required without considering the information in the record on that issue, and we do not find such a rule appropriate. As set forth above, our own examination of the record persuades us that the prosecutor did provide the requisite explanation in this case, and that an objectively reasonable person would find that the articulated reasons bore on S.G.'s ability to be fair and impartial.

## II.    Totality of the Circumstances

Under section 231.7, subdivision (d), having determined that the proffered reasons were not presumptively invalid, the trial court was required to evaluate the prosecutor's reasons and determine whether under the totality of the circumstances there is a substantial likelihood that an objectively reasonable person would view gender as a factor in the use of the peremptory challenge. Section 231.7, subdivision (d)(3), lists numerous

11

factors that may be considered by the court in making this determination.[4]

Johns does not separately address the totality of the circumstances or discuss

_____

[4] Section 231.7, subdivision (d)(3) reads, "In making its determination, the circumstances the court may consider include, but are not limited to, any of the following: [¶] (A) Whether any of the following circumstances exist: [¶] (i) The objecting party is a member of the same perceived cognizable group as the challenged juror.[¶] (ii) The alleged victim is not a member of that perceived cognizable group.[¶] (iii) Witnesses or the parties are not members of that perceived cognizable group.[¶] (B) Whether race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, bear on the facts of the case to be tried. [¶] (C) The number and types of questions posed to the prospective juror, including, but not limited to, any the following: [¶] (i) Consideration of whether the party exercising the peremptory challenge failed to question the prospective juror about the concerns later stated by the party as the reason for the peremptory challenge pursuant to subdivision (c). [¶] (ii) Whether the party exercising the peremptory challenge engaged in cursory questioning of the challenged potential juror. [¶] (iii) Whether the party exercising the peremptory challenge asked different questions of the potential juror against whom the peremptory challenge was used in contrast to questions asked of other jurors from different perceived cognizable groups about the same topic or whether the party phrased those questions differently. [¶] (D) Whether other prospective jurors, who are not members of the same cognizable group as the challenged prospective juror, provided similar, but not necessarily identical, answers but were not the subject of a peremptory challenge by that party. [¶] (E) Whether a reason might be disproportionately associated with a race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups. [¶] (F) Whether the reason given by the party exercising the peremptory challenge was contrary to or unsupported by the record. [¶] (G) Whether the counsel or counsel's office exercising the challenge has used peremptory challenges disproportionately against a given race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, in the present case or in past cases, including whether the counsel or counsel's office who made the challenge has a history of prior violations under _Batson v. Kentucky_ (1986) 476 U.S. 79, _People v. Wheeler_ (1978) 22 Cal.3d 258, Section 231.5, or this section."

the factors set forth in section 231.7, subdivision (d)(3).  And, as explained above, he does not challenge the trial court's determination that an objectively reasonable person would not view the prosecutor's reasons as related to S.G.'s gender (or to conscious or unconscious bias).  Insofar as the rationale for the challenge was unrelated to gender, gender necessarily was not a factor in the exercise of the challenge.

Nonetheless, we briefly address the relevant factors.  Neither Johns nor the victim in this case is a woman.  (§ 231.7, subd. (d)(3)(A)(i) & (ii).)  Although an alleged domestic violence incident precipitated the incident, gender did not necessarily bear on the specific offenses being tried.  (*Id.,* subd. (d)(3)(B).)  As the prosecutor noted, at the time of the challenge, other women remained on the jury and the prosecutor's questioning of S.G. does not suggest bias.  (*Id.,* subd. (d)(3)(C).)  The reasons given by the prosecutor were supported by the record, even though, as Johns argues, there was no evidence tending to prove the *inferences* the prosecutor drew from the relevant facts.  (*Id.*, subd. (d)(3)(F).)  Most importantly, Johns does not argue that the five reasons given are "disproportionately associated with . . . gender." (*Id.*, subd. (d)(3)(E).)  As discussed above, the presumption of invalidity was rebutted as to the three presumptively invalid reasons and each of those reasons is reasonably related to her ability to be a fair and impartial juror rather than gender bias.  S.G.'s lack of jury service also is not reflective of gender bias.  Finally, her husband's employment with the rent board, as Jones admits, "adds little to the analysis," but in any event, also is not a reflection of gender bias.

## DISPOSITION

The judgment is affirmed.

GOLDMAN, J.

WE CONCUR:

STREETER, Acting P. J.
SIMONDS, J. *

---

* Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.